AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

**FILED**

SEP 05 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| In the Matter of the Search of | |
|---|---|
| A black Alcatel "Cricket" cellular telephone, and a black Apple I-phone contained in a clear plastic case, seized from Jose Luis CARDENAS, on August 1, 2019, both currently in the custody of the U.S. Drug Enforcement Administration | ) ) ) ) ) ) ) |

Case No.

2:19 SW 0772- ——— KJN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-1, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) | Conspiracy to Distribute Controlled Substances |
| 21 U.S.C. § 841(a)(1) | Distribution of Controlled Substances |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☒ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Miguel Zavala, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Sept 5, 2019

*Judge's signature*

City and state:  Sacramento, California

Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

McGREGOR W. SCOTT
United States Attorney
JAMES R. CONOLLY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
|---|---|
| A black Alcatel "Cricket" cellular telephone, and a black Apple I-phone contained in a clear plastic case, seized from Jose Luis CARDENAS, on August 1, 2019, both currently in the custody of the U.S. Drug Enforcement Administration | AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH DEVICE |

I, Miguel Zavala, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the DEA, and have been since February 2004. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and make arrests for federal felony offenses. I trained as a DEA Special Agent at the DEA/FBI Academy, Quantico, Virginia.

3.      During my training, I received special training in the Controlled Substance Act, Title 21 United States Code, including but not limited to, Sections 841(a)(1) and 846, Controlled Substance

AFFIDAVIT                                                                      1

1  Violations and Conspiracy to Commit Substance Violations, respectively.

2      4.    I have also received special training regarding criminal organizations engaged in

3  conspiracies to manufacture and/or possess with intent to distribute methamphetamine, cocaine, cocaine

4  base, heroin, marijuana, MDMA, and other dangerous drugs prohibited by law.  I received further

5  training in search and seizure law and many other facets of drug enforcement.  I have spoken to and

6  worked with experienced federal, state and municipal narcotic officers regarding the methods and means

7  employed by drug manufacturers and drug traffickers.

8      5.    During the course of my employment as DEA Special Agent, I have participated in

9  numerous criminal investigations.  I have participated in executing numerous Federal and State search

10  warrants involving the aforementioned listed controlled substances, the seizure of narcotics-related

11  records and other types of evidence that document the activities of criminal organizations in both the

12  manufacturing and distribution of controlled substances.  To conduct these investigations successfully, I

13  have utilized a variety of investigative techniques and resourced, including physical and electronic

14  surveillance, various types of infiltration, including undercover agents, informants, and cooperating

15  sources.  Through these investigations, my training and experience, and conversations with other agents

16  and law enforcement personnel, I am familiar with the methods used by drug traffickers to smuggle and

17  safeguard controlled substances, to distribute, manufacture, and transport controlled substances, and to

18  collect and launder related proceeds.

19      6.    The facts in this affidavit come from my personal observations, my training and

20  experience, and information obtained from other agents and witnesses.  This affidavit is intended to

21  show merely that there is sufficient probable cause for the requested warrant and does not set forth all of

22  my knowledge about this matter.

23      7.    Based on the facts set forth in this affidavit, there is probable cause to believe that

24  violations of 21 U.S.C. §§ 846 and 841(a)(1)(conspiracy to distribute controlled substances) have been

25  committed, are being committed, and will be committed by Jose Luis Cardenas VALENZUELA.

26      **II.**    **IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

27      8.    The property to be searched are (1) a black Alcatel "Cricket" cellular telephone ("**Device-**

28  **1**"), and (2) a black Apple I-phone contained in a clear plastic case ("**Device-2**") (collectively, the

"**Devices**").  The **Devices** are currently located at the offices of the U.S. Drug Enforcement Administration, in Sacramento County, California.

9.      The applied-for warrant would authorize the forensic examination of the **Devices** for the purpose of identifying electronically stored data particularly described in Attachment B.

### III.      PROBABLE CAUSE

**A.      Summary and Overview**

10.      Since February 2019, DEA agents from the Sacramento District Office have been conducting a criminal investigation of a drug trafficking organization (DTO) based in Sacramento, California, involving Jose Luis CARDENAS, Nicholas GRUBER, Terry RIDOUT, Steven KAME, Blanca BAEZ-RENDON, Marisol MEDINA, Tim Blaine JENNINGS and Roberto Gonzalez MARTINEZ.  During the investigation, agents identified CARDENAS, who resides in Sacramento, as the DTO's source of supply of heroin and methamphetamine.

11.      On February 12, 2019, KAME was arrested in Roseburg, Oregon in possession of 3.5 grams of heroin.  A subsequent search of his residence resulted in the seizure of approximately one pound of heroin hidden underneath his bed.  KAME was booked in the Douglas County Jail on drug possession charges.

12.      Following his arrest, KAME consented to a search of his cellular telephone, on which agents found text messages with an individual listed in KAME's phone as "Lucil."  A review of these conversations indicated that "Lucil" had supplied the narcotics in KAME's possession at the time of his arrest.  Agents subsequently identified "Lucil" as Jose Luis CARDENAS.[1]

**B.      August 1, 2019, Consensual Search of CARDENAS' Vehicle**

13.      On August 1, 2019, Detectives from the Douglas Interagency Narcotics Team (DINT) in Douglas County, Oregon, received information that Tim JENNINGS was in the process of purchasing several pounds of methamphetamine from an unknown individual in Canyonville, Oregon.  JENNINGS

---

[1]  On February 28, 2019, United States Magistrate Judge Carolyn K. Delaney authorized a warrant to obtain precision location data for a telephone being utilized by "Lucil."  Case No. 2:19-cr-154-CKD.  During the authorized thirty-day period to obtain precision location data, agents directed a California Highway Patrol Deputy to conduct an identification stop on a vehicle driven by "Lucil."  During the stop, officers positively identified Jose Luis CARDENAS from his California driver's license.

1  had previously been identified by DINT detectives as a methamphetamine dealer and had multiple

2  arrests for drug possession and distribution.

3       14.     At approximately 2:42 p.m., on August 1, 2019, detectives located JENNINGS and his

4  vehicle at the Seven Feather's Casino in Canyonville.  Detectives saw JENNINGS sitting in the

5  passenger seat of a silver 2018 Toyota Camry with California license plate 8BWN784, with an

6  unidentified Hispanic male in the driver's seat, parked next to JENNING's own vehicle.[2]

7  Approximately ten minutes later, detectives observed the two men drive off in the Camry.  Detectives

8  were unable to follow the vehicle but drove around the immediate area in an attempt to locate it.

9       15.     A short time later, detectives located the Camry parked at a nearby café.  Upon departing

10  from the café, the driver of the vehicle failed to stop prior to entering the roadway, in vioalation of

11  Oregon State law 811.505, as detectives were watching.  Shortly thereafter, detectives observed the

12  Camry arrive back in the casino parking lot.  At this time, DINT Detectives approached the Camry and

13  spoke with JENNINGS and the unidentified Hispanic male.  The unidentified Hispanic male identified

14  himself as "Jose Luis Cardenas-Valenzuela" and provided a United States of America Permanent

15  Residence Card.[3]  Detectives deployed a narcotics-detecting canine around the exterior of both

16  JENNINGS' and CARDENAS' vehicles.  The canine alerted to the odor of narcotics only on the silver

17  Toyota Camry.  At this time, CARDENAS gave detectives consent to search his vehicle.  Prior to

18  CARDENAS invoking his *Miranda* Rights, CARDENAS informed detectives that JENNINGS had

19  approximately $20,000.00 in CARDENAS' vehicle.

20       16.     A subsequent search of CARDENAS' vehicle resulted in the seizure of approximately

21  $22,000.00 located in a plastic grocery bag on the driver side floorboard.  Detectives also seized the

22  cellular telephones belonging to CARDENAS and JENNINGS that were located in the vehicle (the

23  **Devices** were both found on CARDENAS' person, and JENNINGS had his own telephone, which is not

24  _____

25     [2] The silver 2018 Toyota Camry was previously identified by DEA agents in Sacramento, CA
belonging to CARDENAS.  The vehicle is registered to Blanca Baez Rendon at 9443 Mira Del Rio

26  Drive, Sacramento, CA.  The residence located at 9443 Mira Del Rio Drive has also been identified as
CARDENAS' residence.

27     [3] DEA agents previously identified CARDENAS from a California Driver's license.  The
pictures contained in both identification are of CARDENAS.  The last name of VALENZUELA is

28  CARDENAS's mother's maiden name which in the Hispanic culture can be listed as one's full name.
CARDENAS and VALENZUELA are the same individual.

1  a subject of this warrant). CARDENAS was cited for driving without a license and was allowed to leave

2  in the silver 2018 Toyota Camry.

3      17.    JENNINGS did not give detectives consent to search his vehicle and invoked his

4  *Miranda* Rights. JENNINGS' vehicle was towed and impounded pending the approval of a state search

5  warrant. Detectives informed JENNINGS of their intention to search his vehicle and then informed him

6  he was free to leave. On August 5, 2019, detectives obtained a search warrant for JENNINGS' vehicle.

7      18.    On August 2, 2019, detectives contacted me regarding DEA's current investigation into

8  CARDENAS' narcotics trafficking activity. Upon further review of their investigation, detectives

9  realized that DEA had requested their assistance to investigate CARDENAS in March 2019.[4]  A

10  March 22, 2019 review of GPS ping data for CARDENAS' telephone showed that he had been en route

11  to Oregon from Northern California. Toll analysis of CARDENAS' telephone around the same time

12  revealed that CARDENAS was in contact with a telephone number that contained an Oregon area code.

13  To gather more information on CARDENAS, I contacted DINT Detectives in an attempt to identify the

14  individuals with whom CARDENAS' had been meeting and the purpose for those meetings. I also

15  provided DINT Detectives with a picture of CARDENAS and several of his identified vehicles,

16  including the silver 2018 Toyota Camry.

17      19.    Based on the above information, I believe that CARDENAS and JENNINGS were

18  meeting in preparation of completing a drug transaction in violation of 21 U.S.C. §§ 841 and 846. The

19  money seized from CARDENAS' vehicle was payment by JENNINGS to CARDENAS for an unknown

20  amount of drugs. I also believe that CARDENAS did not provide his California driver's license to

21  detectives in attempt to conceal his current residence in Sacramento, California. Therefore, I believe the

22  that evidence related to drug trafficking activities may be found on the cellular telephones described in

23  **Attachment A-1** and **A-2**.

24      20.    The **Devices** are currently in the lawful possession of the DEA. They came into the

25  DEA's possession in the following way: DINT Detectives delivered the **Devices** to me once it was

26  known that CARDENAS had been the subject of a DEA investigation that pre-dated the August 1, 2019

27

28

---

[4] On February 28, 2019, United States Magistrate Judge Caroline K. Delaney authorized the acquisition of GPS ping data from telephone number 916-296-6397 (2:19-SW-0154 CKD).

search of CARDENDAS' vehicle.  Therefore, while the DEA might already have all necessary authority to examine the **Devices**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the **Devices** will comply with the Fourth Amendment and other applicable laws.

## IV.   TRAINING AND EXPERIENCE REGARDING DRUG TRAFFICKERS' USE OF CELLULAR TELEPHONES

21.     As a result of my experience and training, I have learned that traffickers who deal in various quantities of controlled substances, or those that assist in that venture, maintain and tend to retain accounts or records of those transactions.  Such records detail amounts outstanding, owed, or expended, along with records tending to indicate the identity of co-conspirators.  These records may be kept on paper or on cellphones, computers, and other electronic devices.  It is also my training and experience that where criminal activity is long-term or ongoing, equipment and records of the crime will be kept for some period of time.  United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991).

22.     In my own training and experience, and from what I have learned by consulting with other agents, narcotics traffickers use handheld devices like "smart" phones and mobile telephones to communicate with one another to facilitate their drug trafficking, either by voice or text message. Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other narcotics traffickers and the dates and times that they and/or the mobile telephone user dialed one another's telephones.  Mobile telephones also contain in their memory a telephone book. This allows the user to store telephone numbers and other contact information; the information stored in a telephone used by a narcotics trafficker is evidence of the associations of the narcotics trafficker, some of which are related to his or her illegal business.  Mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user.  The text message history of a narcotics trafficker's mobile telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a narcotics trafficker and the telephone numbers of those with whom the narcotics trafficker communicated or intended to communicate.  Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer.  Narcotics traffickers sometimes leave voice messages for each other and this is evidence both of their mutual association and

possibly their joint criminal activity. Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by a narcotics trafficker. Mobile telephones can also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who took pictures of evidence of crime. Mobile telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones. In addition, all of these functions are/can be found on a "smart" phone or similar handheld device, as well as evidence of email communications. Because there is probable cause to believe that the above mentioned suspected co-conspirators were engaged in the trafficking of counterfeit oxycodone tablets containing fentanyl, I believe that there is probable cause to believe that the **Devices** seized were used to conduct drug trafficking business, and that information and records relating to these activities will be found stored in the cellular telephones.

23.     Based on my training and experience as a DEA Special Agent, and upon the shared experience of other agents and officers with whom I have worked, I am aware that it is common practice for individuals involved in the trafficking of narcotics to rely on the use of telephones, and particularly cellular telephones to effectuate their scheme. I also know that it is common for those involved in narcotics trafficking to communicate with suppliers and distributors.

24.     It is my opinion, based on my training and experience, and the training and experience of other law enforcement investigators to whom I have spoken, that the items listed in **Attachment B** are items most often associated with communications among drug traffickers during a conspiracy

## V.     TECHNICAL TERMS

25.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a)      Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice

1   communications, wireless telephones offer a broad range of capabilities.  These

2   capabilities include: storing names and phone numbers in electronic "address books;"

3   sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and

4   storing still photographs and moving video; storing and playing back audio files; storing

5   dates, appointments, and other information on personal calendars; and accessing and

6   downloading information from the Internet.  Wireless telephones may also include global

7   positioning system ("GPS") technology for determining the location of the device.

8   b)   Digital camera: A digital camera is a camera that records pictures as digital picture files,

9   rather than by using photographic film.  Digital cameras use a variety of fixed and

10   removable storage media to store their recorded images.  Images can usually be retrieved

11   by connecting the camera to a computer or by connecting the removable storage medium

12   to a separate reader.  Removable storage media include various types of flash memory

13   cards or miniature hard drives.  Most digital cameras also include a screen for viewing

14   the stored images.  This storage media can contain any digital data, including data

15   unrelated to photographs or videos.

16   c)   Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld

17   digital storage device designed primarily to store and play audio, video, or photographic

18   files.  However, a portable media player can also store other digital data.  Some portable

19   media players can use removable storage media.  Removable storage media include

20   various types of flash memory cards or miniature hard drives.  This removable storage

21   media can also store any digital data.  Depending on the model, a portable media player

22   may have the ability to store very large amounts of electronic data and may offer

23   additional features such as a calendar, contact list, clock, or games.

24   d)   GPS: A GPS navigation device uses the Global Positioning System to display its current

25   location.  It often contains records the locations where it has been.  Some GPS navigation

26   devices can give a user driving or walking directions to another location.  These devices

27   can contain records of the addresses or locations involved in such navigation.  The Global

28   Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites

orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e)   PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f)   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

26.   Based on my training, experience, and research, I believe that the **Devices** may have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigational devices, and PDAs.   In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## VI.   ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27.   Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

28.   Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the **Devices** because:

a)   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b)   Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d)   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on

1    a storage medium.

2    29.    Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the
3    warrant I am applying for would permit the examination of the device consistent with the warrant.  The
4    examination may require authorities to employ techniques, including but not limited to computer-
5    assisted scans of the entire medium, that might expose many parts of the device to human inspection in
6    order to determine whether it is evidence described by the warrant.

7    30.    Manner of execution.  Because this warrant seeks only permission to examine a device
8    already in law enforcement's possession, the execution of this warrant does not involve the physical
9    intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize
10   execution of the warrant at any time in the day or night.

11                              **VII.    CONCLUSION**

12   31.    Based on these facts, my training, and my experience, I believe there is probable cause to
13   believe that CARDENAS has violated Title 21, United States Code, Sections 841(a)(1) and 846, and that
14   the **Devices** described in **Attachments A-1** and **A-2** will contain evidence of these crimes.

15   32.    I submit therefore that this affidavit supports probable cause for a search warrant
16   authorizing the examination of the **Devices** described in **Attachments A-1** and **A-2** to seek the items
17   described in **Attachment B**.

18   33.    It is respectfully requested that this Court issue an order sealing, until further order of the
19   Court, all papers submitted in support of this application, including the application and search warrant.  I
20   believe that sealing this document is necessary because the warrant is relevant to an ongoing
21   investigation into the criminal organizations as not all of the targets of this investigation will be searched
22   at this time.  This Affidavit contains information regarding potential targets.  In light of the ongoing
23   nature of this investigation, and the likelihood that notice to above-identified individuals may cause
24   them to destroy evidence, flee from prosecution, and notify confederates, I request that this Affidavit
25   and the resulting search warrants be sealed on the Court's docketing system, with the copies utilized by
26   law enforcement officers participating in the investigation.  Based upon my training and experience, I
27   have learned that, online criminals actively search for criminal affidavits and search warrants via the
28   internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them

1  publicly online.  Premature disclosure of the contents of this affidavit and related documents may have a

2  significant and negative impact on the continuing investigation and may severely jeopardize its

3  effectiveness.

4                                                      Respectfully submitted,

5

6                                                      _____
                                                       Miguel Zavala
7                                                      Special Agent
                                                       DEA
8

9  Subscribed and sworn to before me on:  Sept. 5, 2019

10

11 _____
   The Honorable Kendall J. Newman
12 UNITED STATES MAGISTRATE JUDGE

13

14

15

16 Approved as to form by AUSA JAMES R. CONOLLY

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A-1

The property to be searched is a black Alcatel "Cricket" cellular telephone, hereinafter "**Device-1**." **Device-1** is currently in the custody of the Drug Enforcement Administration.

This warrant authorizes the forensic examination of **Device-1** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-2

The property to be searched is a black Apple I-phone contained in a clear plastic case, seized from Jose Luis CARDENAS on August 1, 2019, hereinafter "**Device-2**." **Device-2** is currently in the custody of the Drug Enforcement Administration.

This warrant authorizes the forensic examination of **Device-2** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the **Devices** described in **Attachment A-1** and **Attachment A-2** that relate to violations of  21 U.S.C. §§ 846, 841(a)(1) (conspiracy to distribute controlled substances) and § 841(a)(1) (distribution of controlled substances), and involve Jose Luis CARDENAS since September 5, 2018, including:

    a.  Data and information related to stored applications and/or websites used to communicate with associates and co-conspirators;

    b.  lists of customers and related identifying information;

    c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e.  any information recording schedule or travel;

    f.  all bank records, checks, credit card bills, account information, and other financial records.

    g.  records of Internet Protocol addresses used;

    h.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.    Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephones, including:

    a.  Incoming call history;

    b.  Outgoing call history;

    c.  Missed call history;

    d.  Outgoing text messages;

    e.  Incoming text messages;

    f.  Draft text messages;

g.  Telephone book;

h.  Data screen or file identifying the telephone number associated with the mobile telephone searched;

i.  Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;

j.  Voicemail;

k.  User-entered messages (such as to-do lists); and

l.  Stored media such as photographs or video.

4.  Any passwords used to access the electronic data described above.

5.  Any and all locations, addresses, GPS coordinates, names, time/date information, or other electronic data related to addresses and driving directions.


As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>A black Alcatel "Cricket" cellular telephone, and a<br>black Apple I-phone contained in a clear plastic case,<br>seized from Jose Luis CARDENAS, on August 1,<br>2019, both currently in the custody of the U.S. Drug<br>Enforcement Administration | )<br>)<br>)<br>)<br>)<br>) |

Case No.

**2:19 SW 0772 - ___ KJN**

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-1, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____September 19, 2019_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: ___Sept. 5, 2019___   9:50 A.M.

_____
Judge's signature

City and state:     Sacramento, California

Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

| Signature of Judge | Date |

## ATTACHMENT A-1

The property to be searched is a black Alcatel "Cricket" cellular telephone, hereinafter "**Device-1.**" **Device-1** is currently in the custody of the Drug Enforcement Administration.

This warrant authorizes the forensic examination of **Device-1** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the **Devices** described in **Attachment A-1** and **Attachment A-2** that relate to violations of 21 U.S.C. §§ 846, 841(a)(1) (conspiracy to distribute controlled substances) and § 841(a)(1) (distribution of controlled substances), and involve Jose Luis CARDENAS since September 5, 2018, including:

  a.  Data and information related to stored applications and/or websites used to communicate with associates and co-conspirators;

  b.  lists of customers and related identifying information;

  c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

  d.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

  e.  any information recording schedule or travel;

  f.  all bank records, checks, credit card bills, account information, and other financial records.

  g.  records of Internet Protocol addresses used;

  h.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephones, including:

  a.  Incoming call history;

  b.  Outgoing call history;

  c.  Missed call history;

  d.  Outgoing text messages;

  e.  Incoming text messages;

  f.  Draft text messages;

g.  Telephone book;

h.  Data screen or file identifying the telephone number associated with the mobile telephone searched;

i.  Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;

j.  Voicemail;

k.  User-entered messages (such as to-do lists); and

l.  Stored media such as photographs or video.

4.   Any passwords used to access the electronic data described above.

5.   Any and all locations, addresses, GPS coordinates, names, time/date information, or other electronic data related to addresses and driving directions.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.